U. S., EX REL. R. HOE & Co., and GEORGE G. GILL,
*vs.*
BENJAMIN BUTTERWORTH, Commissioner of Patents.

LAW.   No. 25,184.

Decided April 14, 1884.
The CHIEF JUSTICE and Justices MAC ARTHUR, COX and JAMES sitting.

1. The decision of the Commissioner of Patents on the right of an applicant to receive a patent, is an act of executive discretion and cannot be interfered with by mandamus.

2. So, too, after the decision has been made and communicated to the applicant, and at any time before the issue of the patent for the signature of the Secretary of the Interior, it is within the Commissioner's discretion to reconsider his decision and to make a contrary one.

3. But if he does not, then his executive discretion being exhausted in deciding that the applicant is entitled to a patent, there remains but the ministerial duty to issue it; and to compel the performance of this act, in case of refusal, mandamus is the proper remedy.

4. It is a settled rule that the Revised Statutes are to be construed in the light of the original statutes from which they were taken.

5. An appeal from the decision of the Commissioner of Patents upon the right of an applicant to receive a patent, lies directly from him to this court in General Term, and not to the Secretary of the Interior; the latter has not appellate or revisory power over the decision of the Commissioner upon that question.

THE CASE is stated in the opinion.

MUNSON & PHILLIPS for relator.

FRANK T. BROWN for respondent.

Mr. Justice JAMES delivered the opinion of the court.

This is a petition for a writ of peremptory mandamus to the Commissioner of Patents to receive the final fee and to cause letters-patent to the relators, R. Hoe & Co., to be prepared and presented to the Secretary of the Interior for his signature. It sets forth that, on March 12, 1881, the relator, Gill, made application for letters-patents for certain improvements in printing machines; that on primary examination the Commissioner was of opinion that this application would Interfere with an unexpired patent granted to Walter Scott on March 8, 1881; that such proceedings were had that an interference was duly declared, whereupon the

examiner of interferences decided that Scott was the original and first inventor of said improvements; that upon appeal to the examiners-in-chief this decision was affirmed; that upon further appeal to the Commissioner, the latter decided that the relator, Gill, was the original and first inventor, and entitled to a patent for said improvements, and that he finally decided, on June 4, 1883, that such patent should issue; that the relator, Gill, assigned to the other relators all his title to said invention, and requested the Commissioner to issue the letters-patent therefor, when granted, to them; that the final fee was tendered to the Commissioner, who refused to accept it, and also refused to cause letters-patent to be prepared and presented to the Secretary of the Interior for signature; that the relators were informed by the Commissioner that the only ground of his refusal was the pendency before the Secretary of the Interior of an appeal taken by Scott; that the Commissioner has not denied, and does not deny, that a patent should issue to Gill, unless the Secretary has the right to suspend the issuing thereof by reason of the appeal pending before him; and that the Commissioner has still later informed them that the Secretary has, upon said appeal, reversed his decision and decided that Scott is the original and first inventor of said improvements, and is entitled to a patent therefor. In the communication last referred to, which is addressed to the relator's counsel, and is made part of the petition, the Commissioner says:

"If the decision of the Commissioner adjudging priority to your client is final, and not subject to review and reversal by the Honorable Secretary of the Interior, then your client is entitled, on payment of final fee, to have his patent prepared and issued. But if the Honorable Secretary has, under the law, jurisdiction on appeal to hear and determine the cause, then your client is not so entitled. The decision of the Commissioner of Patents, is that your client, Gill, is entitled to the patent prayed for; on appeal from that decision the Honorable Secretary decided that your client is not so entitled. In view of the facts related, I refuse to is-

sue a patent for your client, or to prepare a patent for issue, or to take any steps whatever in that direction.    I do this, not because I want further time to consider the case, but because the Honorable Secretary has, on hearing the cause, reversed the decision of the Commissioner of Patents, as hereinbefore stated."

In his return the Commissioner says that the statements of the relators as to the applications, appeals and decision of the Commissioner are true, and that this decision has not been reversed or modified by the Commissioner; that on the 14th of June, 1883, an appeal to the Secretary of the Interior was taken by Scott, and prosecuted under rules prescribed by the Secretary, and that on March 7, 1884, the Secretary made a decision reversing the decision of the Commissioner and adjudging that Scott was the first inventor and that Gill was not entitled to a patent; that pending that appeal, uamely, on the 4th day of March, 1884, the relator did demand of respondent that he prepare a patent for issue to the relator, Gill, in pursuance of the decision of the Commissioner of Patents, and that respondent refused so to do, or to take any steps in that behalf; that, after the decision of the Secretary had been pronounced, the relator again demanded that the respondent prepare for issue a patent in accordance with the judgment of the Commissioner, tendering at the same time the final fee due; that respondent refused to accept said fee, and again refused to prepare said patent; that he so refused, not because he desired to make further inquiry, or to be further advised in that behalf; but that he based his refusal, and does so still, solely upon the ground that the Secretary of the Interior had entertained the appeal taken to him from said decision, and had entered a decision reversing that of the Commissioner of Patents, and awarded priority of invention to Walter Scott.    The return further states that, on the 26th of February, 1884, the Secretary of the Interior advised respondent that, in pursuance of an opinion of the Attorney-General, to the effect that he could, on appeal to him, exercise the jurisdiction to review the decision of the Commissioner of Patents, he

had exercised that jurisdiction; and that respondent, in deference to that opinion and the action of the Secretary, refused, and does refuse to accede to the demand of the relator. In conclusion he says:

"Your respondent further says, that if the judgment of the Commissioner of Patents, *which is, that the relator is entitled to receive his patent, as prayed for,* is final, and if upon such judgment it is the lawful duty of the respondent to accept said final fee and take the necessary and proper steps to prepare said patent for issue, as prayed, then your respondent has improperly refused to prepare said patent for issue; but if his decision is subject to review and reversal on appeal to the honorable the Secretary of the Interior, then such refusal on the part of your respondent to accept said fee and prepare said patent for issue, is right and proper."

Upon these facts we are asked to require the Commissioner of Patents to accept the final fee tendered by the relators, and to prepare and submit to the Secretary of the Interior for his signature, letters-patent to them for the improvement in printing machines described in the petition. The questions involved have been argued with very noticeable care and ability by counsel for the relators, and counsel appearing, as we understand, in fact, in the interest of Scott, but nominally, as *amicus curiæ,* inasmuch as Scott is not a party to this proceeding.

It is claimed by the latter that the relators are not entitled to the remedy of mandamus, first, because the Commissioner of Patents has no longer the legal power to do the act which would be commanded by the writ; that power having been superseded and taken away from him by a lawful appeal to the Secretary of the Interior, and a lawful and controlling decision by the latter, that the relators are not entitled, and that Walter Scott, the adverse party to the interference, is entitled to a patent for the improvements in question; and secondly, because, even if it should be held that the appeal to the Secretary of the Interior, and his decision in the premises, were unauthorized, and therefore in contemplation of law a nullity, the writ would do something more than

command a merely ministerial act, and would, in fact, control what would still be a matter of executive discretion with the Commissioner himself; and third, because the patent laws have provided for the relator a different and adequate remedy. Reversing the order of these propositions, we shall first consider whether, assuming that the Commissioner's decision upon a question of interference is final and conclusive as to the matters submitted to him, so far as executive action is concerned, and is not subject to review by the Secretary of the Interior, the writ of mandamus is inapplicable under the circumstances of this case.

We find that the Commissioner has in his return defined the status of the proceedings reached in his own action. He "admits that it is true that the Commissioner of Patents did decide and adjudge that the said George C. Gill was entitled to receive a patent, as set forth by the relator herein, * * * and that said decision has not been reversed or modified by the Commissioner of Patents." He then states that, when he refused the relator's demand for the issuance of a patent, it was "not because he desired to make further inquiry, or to be further advised in that behalf;" and in the conclusion of his return, he says: "If the judgment of the Commissioner of Patents, *which is that the relator is entitled to receive his patent as prayed for*, is final, and if upon such judgment it is the lawful duty of the respondent to accept said final fee and take the necessary and proper steps to prepare said patent for issue as prayed, then your respondent has improperly refused to prepare said patent for issue."

Now, we do not doubt that it is within the executive discretion of the Commissioner, even after making and communicating to an applicant a decision in his favor, and at any time before the issue of a patent for the signature of the Secretary, to reconsider that decision, and to make a contrary one. In the ordinary course of business the whole matter rests in executive discretion, at least down to that point, and, if nothing more appears, the court will not interfere by the writ of mandamus to compel the issue of a patent,

as the next and consequent step. The Commissioner could answer a demand of the applicant by the simple statement that he had changed his mind, and had decided that the applicant was not entitled to a patent; and, so long as he must be supposed to occupy that position, he cannot be treated as if he had ceased to do so. It cannot yet be said that his only remaining duty is ministerial. But the respondent does not, in any true and practical sense, occupy that position. He has said, substantially, that the original decision of the Commissioner of Patents, to the effect that the relator was entitled to a patent as prayed for, has not been changed; that he does not even intend to re-examine it, and that it *is now his decision.* And it is important to observe that this was not merely a position taken in his official communications with the relators; it is the position on which he stands in this court. Now, a position thus assumed in a judicial proceeding, may, for the purposes of that proceeding, be treated by the court as the conclusive legal attitude of the party. The executive decision which he thus presents to us, and stands upon, must be regarded here as a final fact which is to determine legal consequences in the case. What, then, is the legal consequence of a fixed decision, or what we must treat as a fixed decision—that an applicant is entitled to a patent? No question could be raised if that decision were final, because the law had declared it to be final as soon as it was made. The legal consequence of that fixed decision would be the ministerial duty to issue the patent. We perceive no principle which should distinguish the Commissioner's duty in the case before us from his duty in the case supposed. On principle, the same duty must accrue whenever his decision to issue a patent must be treated by the court as a fixed and permanent one. Although the law contemplates that the Commissioner may reverse such a decision and *thereby* defeat the issuance of a patent, it clearly does not contemplate that he may adhere to and stand upon it in this court, and yet defeat the issuance of a patent by simply refusing to act in pursuance of that decision. The progress of executive duty may law-

fully be reversed by a new and lawful executive action in a, contrary direction, but it would be unreasonable that the law should be arrested at a half-finished stage simply by non-completion, and that there should be no remedy to compel its movement. It would be playing with words, substituting phrases for substance, to say that the writ of mandamus must not be applied in commanding the final step to be taken, on the ground that, down to the actual issue of the patent, the whole matter must still be regarded by us as resting in executive discretion, whether a patent shall issue or not. When an officer stands in court, by his return, upon the ground that he has exhausted the uses of his executive discretion, and refuses to take the ministerial step which follows next when executive discretion has ended, he presents to the court the very evil which the writ of mandamus is designed to remove; a refusal, namely, to perform a ministerial duty.

But it was suggested further, that the determination of the Commissioner not to disregard the action of the Secretary, was an exercise of executive discretion, and that, whether he was right or wrong in that determination, his executive action in that matter is not to be controlled by mandamus. It must be remembered that we are now considering the applicability of this remedy on the hypothesis that the Commissioner's control of the question before him was final, and that the Secretary was without power in the premises. On that hypothesis the Commissioner's forbearance or refusal to proceed according to his own judgment, must be regarded in law as simply an act of deference. It was not a decision as to his own legal duty. However discreet such conduct towards the head of a department may have been, it did not constitute an exercise of that kind of discretion with which a court must not interfere by mandamus.

It was also suggested that, as the statute provides that, "The Commissioner of Patents, under the direction of the Secretary of the Interior shall superintend or perform all duties respecting the granting and issuing of patents

directed by law," the Commissioner must be held to have construed this provision, and to have acted upon that construction in refusing to proceed in pursuance of his own decision after the Secretary had undertaken to review and reverse it. This, it is claimed, was an exercise of executive power and discretion which the court must not control by mandamus. But it is apparent on the whole face of his return that the Commissioner, in refusing to follow up his own decision, did not, as a matter of fact, act upon any executive construction of his own as to that provision. It is to be gathered from his answer that the question whether that section gave revisory power to the Secretary, was the one which he had not undertaken to settle. Instead of informing us, either expressly or inferentially, that his decision upon that question was the rule of his action in refusing to proceed in pursuance of his own original decision, he distinctly submits it as an unsettled question. Deference to the will of the Secretary, so far from being a decision upon this question, constituted an abandonment of any effort to decide it. Plainly he did not attempt to decide executively upon the effect of the provisions referred to. But the important point to be observed is, that it is wholly immaterial whether he acted upon a construction of that law. If his decision upon the original question before him was not subject to revision by the Secretary, and if he himself had so acted that only a ministerial duty remained to be performed by him, that ministerial duty would not cease to exist merely by reason of his deciding incorrectly that the whole of his power had been taken away. To interpose that decision would be merely to give a bad reason for refusing to perform his ministerial duty; and to describe it as an exercise of executive discretion, and thus to exclude the remedy of mandamus, on the principle that it is never used to control executive discretion, would be to defeat the remedy by a mere misnomer. He had no executive discretion to deny his duty, either directly or by circuity.

It was next objected that this remedy is not applicable because a different and adequate remedy has been provided for

the relators. This objection refers to section 4915 of the Revised Statutes, which provides that:

"Whenever a patent is refused, either by the *Commissioner of Patents* or by the Supreme Court of the District of Columbia upon appeal from the Commissioner, the applicant may have remedy by a bill in equity, and the court having cognizance thereof, on notice to adverse parties, and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention as specified in his claim. And such adjudication, if it be in favor of the right of the applicant, shall authorize the Commissioner to issue such patent on the applicant filing in the Patent Office a copy of the adjudication, and otherwise complying with the requirements of law. In all cases where there is no opposing party, a copy of the bill shall be served on the Commissioner; and all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not. This objection, that the relators have another remedy in this case, comes rather inconveniently from the party who makes it. His principal position is that the decision of the Commissioner has been lawfully reversed by the Secretary. If that be true, it is the Secretary, not the Commissioner, who has refused them a patent; and this section does not provide them a remedy by a bill in equity on such refusal. We must consider the objection, however, on the hypothesis that the Secretary's action is a nullity.

This section applies to interference cases as well as to applications *ex parte.* When there are adverse parties, notice must be given to them; they are let in as formal parties to the contest, and the contest is upon proofs and the merits of the adverse claims. The case is heard *de novo.* Can it be seriously claimed that the right to try his case in this manner, under the burden of paying all the expenses of the proceeding, is an adequate remedy to a party who *is already entitled* to his patent by the favorable decision of the Commissioner? We conceive that this is one of the cases in which a question is its own answer. Although it may be said that

the object both of the petition for the writ of mandamus and of the bill in equity is to obtain a patent, the subject of enquiry and the basis of relief in the two proceedings are wholly different. In the proceeding for mandamus, the inquiry is, whether the right of the petitioner to a patent has already been decided, and in such a way that he is entitled to the fruit of that decision by performance of a merely ministerial duty. In the equity proceeding, the inquiry is, whether he proves originally a right to have a patent. Clearly, the right to have the latter inquiry and adjudication is not an adequate remedy to one who already has a sufficient determination of the same question, and only asks for execution.

It was insisted at the argument, that the objections which we have examined, or any one of them, would forbid the granting of a writ of peremptory mandamus in this case, even if the court should be of the opinion that the Secretary of the Interior does not possess revisory or appellate control over such decisions of the Commissioner of Patents, and that they should preclude an inquiry into the extent of the Secretary's powers. We have, therefore, considered them attentively; and we hold that if the power of the Commissioner of Patents to adjudicate the questions presented to him in the premises was final, so far as executive action was concerned, and was not superseded by a lawful appeal to the Secretary, there is nothing in these objections which precludes the application of the writ of mandamus. We proceed, therefore, to consider the question whether the power of the Commissioner to comply with the command prayed for has been taken away from him by a lawful appeal to the Secretary, and a lawful decision by the latter reversing the decision of the Commissioner.

The claim of revisory power in the Secretary of the Interior was based, in the argument, upon the following provisions of the Revised Statutes:

"SECTION 441. The Secretary of the Interior is charged with the supervision of public business relating to the following subjects: First, the census, when directed by law;

second, the public lands, including mines; third, the Indians; fourth, pensions and bounty lands; fifth, patents for inventions; sixth, the custody and distribution of publications; seventh, education ; eighth, government hospital for the insane; ninth, Columbia asylum for the deaf and dumb.

"Section 481. The Commissioner of Patents, *under the direction of the Secretary of the Interior,* shall superintend or perform all duties respecting the granting and issuing the patents directed by law.

"Section 483. The Commissioner of Patents, *subject to the approval of the Secretary of the Interior,* may from time to time establish regulations, not inconsistent with law, for the conduct of proceedings in the Patent Office.

"Section 487. For gross misconduct, the Commissioner of Patents may refuse to recognize any person as a patent agent, either generally or in any particular case ; but the reasons for such refusal shall be duly recorded, and be *subject to the approval of the Secretary of the Interior.*

"Section 4883. All patents shall be issued in the name of the United States of America, under the seal of the Patent Office, and shall be *signed by the Secretary of the Interior,* and countersigned by the Commississioner of Patents."

Especial emphasis, of course, was laid upon section 481, which provides that the Commissioner shall perform his duties under the direction of the Secretary. It is claimed broadly that, "The power of supervision and direction gives jurisdiction to the Secretary, upon application made to him in any form that he may proscribe, by appeal or otherwise, to affirm, reverse, or modify the action of the Commissioner."

The provisions referred to, and all of the provisions of the Revised Statutes which we shall have occasion to consider, were taken from the act of July 8, 1870, which was entitled, "An act to revise, consolidate and amend the statutes relating to patents and copy-rights." In that work of consolidation, section 481 was taken, without any change except the rejection of redundant words, from the first section of the act of July 4, 1836, by which the office

of Commissioner of Patents was first established. It is of some importance, therefore, to examine the extent of the supervisory powers of the Secretary of State, as given by this same provision in the original act.

Section seven of that act provided that the Commissioner should "make or cause to be made," an examination of every application for a patent, and that if, after certain proceedings had, he should decide that the applicant was not entitled to a patent, an appeal might be taken to a board of examiners, "to be composed of three disinterested persons," appointed for that purpose by the Secretary of State, one of them, at least, to be "selected, if practicable and convenient, for his knowledge and skill in the particular art, manufacture or branch of science," to which the alleged invention appertained. This board might "reverse the decision of the Commissioner, either in whole or in part," and when their opinion was certified to him, he was to be governed by it in the further proceedings to be had. Section eight related to interference cases, and provided a like appeal with like effect, from the Commissioner's decision.

The act of 1836 provided, then, that the Commissioner should perform his duties "respecting the granting and issuing of patents," "under the direction of the Secretary of State," and it also provided that he should make a decision on the question whether an applicant was entitled to a patent; but it provided further that these decisions should be revised and controlled by a board of examiners. This revision was part of the regular course of executive administration, and the statute gave the Secretary no control over the board of examiners. It is obvious, then, that the Secretary's control over the Commissioner could not be exercised in the form of revisory power over his decisions. Now, it is nothing to the purpose to suggest here that a revisory tribunal no longer intervenes between the Commissioner and the Secretary's control, and that the decisions of the former are thus brought within the operations of the Secretary's direction. The point to be observed is, that the direc-

tory power of the Secretary of State and of the Secretary of the Interior was expressed in the same terms, and that that grant of power, as found in the act of 1836, did not pretend to give appellate and revisory power over the decisions which the Commissioner was authorized to make. Let us see whether anything in the act of 1870, which is found in the Revised Statutes, requires us to adopt a different rule in construing the same language.

It is important to observe just here, that, although section 481 of the Revised Statutes, which gives the Secretary of the Interior directory power over the duties of the Commissioner of Patents, is found in Title XI, relating to the organization of the Interior Department, and the sections which we shall consider are found in Title LX, relating to the subject of patents and copyrights, all of them were taken from the act of July 8, 1870. In that act they formed parts of one system, and were to be construed together as such. It is a settled rule of construction of the Revised Statutes that its contents are to be construed in the light of the original statutes from which they were taken. This section relating to directory power is, therefore, to be regarded as part of the general system, of which the sections now to be considered are also a part. The following sections provide a system of appeals by which all applications, whether in interference cases or *ex parte*, may be brought before the Commissioner for his decision:

"SEC. 4904. Whenever an application is made for a patent, which, in the opinion of the Commissioner, would interfere with any pending application, or with an unexpired patent, he shall give notice thereof to the applicants, or applicant and patentee, as the case may be, and shall direct the primary examiner to proceed to determine the question of priority of invention. And the Commissioner may issue a patent to the party who is adjudged the prior inventor, unless the adverse party appeals from the decision of the primary examiner, or of the board of examiners-in-chief, as the case may be, within such time, not less than twenty days, as the Commissioner shall prescribe.

"Sec. 4909. Every applicant for a patent, or for the re-issue of a patent, any of the claims of which have been twice rejected, and every party to an interference, may appeal from the decision of the primary examiner, or of the examiner in charge of interferences in such case, to the board of examiners-in-chief; having once paid the fee for such appeal.

"Sec. 4910. If such party is dissatisfied with the decision of the examiners-in-chief, he may, on payment of the fee prescribed, appeal to the Commissioner in person."

These sections, as we have said, provide a regular system of appeals, both in interference and· *ex parte* cases, which brings every application to the Commissioner for decision. The statute commands him to decide, and of course it intends that he shall apply the usual processes of decision; in other words, the *judgment* of the person deciding. Can it be possible that the legislature intended, by giving the Secretary directory power, that he might intervene at this point of time, and direct the Commissioner what decision he, the Commissioner, was to make? It must be kept in mind that the whole of the Secretary's power must be found within that one word, "direction." It hardly seems worth while to reason upon the question whether a general power to direct authorizes the directing officer to dictate to one who is charged by the very same law with the duty and power of hearing the parties to a contest, and of deciding ·between them accordingly, what conclusion his mind must ·reach. Clearly he cannot, in the exercise of this power, dictate to the Commissioner touching his decision before he ·makes it, or while he is making it. Can it be imagined, then, that the power of "direction" which cannot lawfully ·be applied to the Commissioner's action while he is deciding, ·was intended to be applied to the same matter after he had decided? Is it permissible to say that a power of direction which cannot be exercised *as* direction, may be exercised by ·way of appeal and reversal, and· all the time be called "directing"?

We are informed by the pleadings and exhibits that the

Secretary of the Interior has acted upon the opinion of a former Attorney-General to the effect that this general provision of directory power controls the meaning of every section which assigns a duty to the Commissioner, just as if it had been inserted in each; and that the duty and power of hearing and deciding contested questions of priority of invention, for example, are to be construed as if the statute said they were to be performed under the direction of the Secretary. We hold that precisely the opposite rule of construction must be applied to the statute in order to ascertain correctly the intention of the legislature. It must be remembered that this provision is general, and that the provisions relating to the duties and powers of the Commissioner are specific. It is the latter which must control. When they are considered together, it must be held that the Commissioner must perform his duties under the direction of the Secretary except when he is already directed what he must do by the superior directory power of the legislature. Applying this rule of construction to the Commissioner's decisions in cases of interference, we hold that they are not subject to the directory power of the Secretary, either by contemporaneous dictation, or by the circumlocution of appeal and reversal, described as direction.

We are brought to this conclusion independently of the provisions of the patent laws which remain to be considered; but we are still further confirmed by these provisions.

Section 4910, as we have seen, provides for an appeal to "the Commissioner in person." Section 4911 then provides that, "If such party, except a party to an interference, is dissatisfied with the decision of the Commissioner, he may appeal to the Supreme Court of the District of Columbia, sitting in banc." By section 4913 the Commissioner is required to furnish the court with "the grounds of his decision, fully set forth in writing, touching all the points involved by the reasons of appeal." Section 4914 confines the revision here to the points set forth in the reasons of appeal, and provides that, after hearing the case, this court shall return to the Commissioner a certificate of its proceedings and

decisions which shall be entered of record in the Patent Office, "and shall govern the further proceedings in the case."

These sections authorize a revision of the grounds on which the Commissioner refuses a patent on application *ex parte*, and they do not authorize a revision of the grounds on which the Secretary may act. Manifestly it was the intention of Congress to provide a judicial revision which should be available in every case in which an application *ex parte* is refused; in other words, that refusal should not be made by an officer whose grounds of decision are not subjected to revision by this section.

Section 4915 provides a still further remedy in case of the refusal of a patent for application *ex parte*, and applies the remedy to refusal of an application in interference. It directs that:

"Whenever a patent on application is refused, either by the Commissioner of Patents or by the Supreme Court of the District of Columbia upon appeal from the Commissioner, the applicant may have remedy by bill in equity; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the Commissioner to issue such patent, on the applicant filing in the Patent Office a copy of the adjudication, and otherwise complying with the requirements of law. In all cases where there is no opposing party, a copy of the bill shall be served on the Commissioner; and all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not."

This section, and the provisions for appeal to this court, which we have just considered, provide either a formal appeal or an original proceeding substantially appellate in its character, which seems manifestly intended to cover *all* cases in which a patent is "refused," whether they be cases

of application *ex parte* or in interference. It is to be observed that in both cases a refusal *by the Commissioner* is the basis of the remedy; and that it seems to be thus implied that, so far as the executive department is concerned, the examination of a claim for a patent, and the power to decide upon such claim, terminate with him.

But another class of decisions was still to be provided for. The provisions which we have considered relate only to cases in which patents were refused; but it might happen that a patent was improperly granted. A remedy for such cases is found in section 4918, which provides that:

"Whenever there are interfering patents, any person interested in any one of them, or in the working of the invention claimed under either of them, may have relief against the interfering patentee, and all parties interested under him, by suit in equity against the owners of the interfering patent; and the court, on notice to adverse parties, and other due proceedings had according to the course of equity, may adjudge and declare either of the patents void in whole or in part, or inoperative, or invalid in any particular part of the United States, according to the interest of the parties in the patent or the invention patented. But no such judgment or adjudication shall affect the right of any person except the parties to the suit, and those deriving title under them subsequent to the rendition of such judgment."

In this review of the patent laws, certain facts are prominent. The same statute which provides that the Commissioner of Patents shall "perform all duties respecting the granting and issuing of patents" under the "direction of the Secretary of the Interior," provides expressly and in detail for a regular course of examination; it provides expressly for a regular course of appeals from the primary examiners to the examiners-in-chief, from the examiners-in-chief "to the Commissioner in person," and for a decision by him upon the right of an applicant to receive a patent; it does not provide expressly for an appeal from the Commissioner's decision to the Secretary of the Interior, but it

does provide expressly for an appeal and revision of those decisions by this court, or for an original judicial proceeding by which relief against those decisions may be had. These provisions of appeal and relief constitute a system, and when the legislature provides such a system, we must suppose that it was intended to be complete and sufficient. As no place in that system was assigned to the Secretary of the Interior, it cannot have been intended that he should have one. Taken in connection with these provisions, his general power of "direction" must be construed to be a power to direct except when the Commissioner is authorized by the same statute to make "decisions."

We hold, then, that the attempted reversal of the Commissioner's decision by the Secretary, in the case before us, was unauthorized, and therefore a nullity; and that, consequently, the Commissioner, having finally adjudicated that the relators are entitled to a patent, improperly refused to issue the same. The writ of peremptory mandamus will accordingly issue as prayed for.